**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MARION A. MITCHELL,**

             **Plaintiff,**              **CIVIL ACTION NO. 13-10178**

    **vs.**

                                  **DISTRICT JUDGE AVERN COHN**

**COMMISSIONER OF**             **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

             **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment (docket no. 20) be **GRANTED**, Defendant's motion for summary judgment (docket no. 22) be **DENIED**, and this matter be reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.**    **PROCEDURAL HISTORY:**

      Plaintiff protectively filed Title II and Title XVI applications for a period of disability, disability insurance benefits, and supplemental security income on August 11, 2010, alleging disability beginning September 12, 2009 due to spinal stenosis, arthritis in the right hip and hands, right elbow tendinitis, a pinched nerve in her neck, diabetes, high blood pressure, bilateral rotator cuff tears, post traumatic stress disorder, and anxiety. (TR 140-45, 160, 167). The applications were denied by the Social Security Administration on January 18, 2011. Subsequently, Plaintiff filed a written request for a *de novo* hearing. On August 4, 2011, Plaintiff appeared with a representative in Oak Park, Michigan and testified at a hearing held before Administrative Law Judge (ALJ)

1

Michael Wilenkin.[1]  (TR 38-62).  Vocational Expert (VE) James Fuller also appeared and testified at the hearing.  In a September 2, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because she remained capable of performing her past relevant work as a substance abuse counselor.  (TR 24-31).  The Appeals Council declined to review the ALJ's decision and Plaintiff filed a complaint for judicial review.  The parties filed cross motions for summary judgment which are currently before the Court.

## III.    TESTIMONY OF PLAINTIFF AND THE MEDICAL EVIDENCE

### A.    Plaintiff's Testimony

Plaintiff was approximately fifty-one years old on her alleged disability onset date.  She lives in a first floor apartment with a friend.  She completed three years of college and earned an associate's degree in substance abuse therapy.  (TR 42, 161).

Plaintiff testified that she has osteoarthritis in her right hip, arthritis in her hands, high blood pressure, tendinitis in both elbows, spinal stenosis, depression, and anxiety disorders.  She reported that she has a difficult time holding objects, writing, and opening jars.  She also gets dizzy, has blurred vision, and has pain and stiffness in both elbows, her hands, and her lower back.  She takes Vicodin for pain, Flexeril, Naproxen, Cymbalta, and uses a heating pad daily.  She suffers from depression which causes her to feel worthless, isolate from others, and leads to crying spells. Plaintiff likes to read but has difficulty remembering what she has read.  She sees a psychiatrist and a therapist once a month.

Plaintiff estimated that she can walk one block, stand thirty minutes at a time, sit

_____

[1]Plaintiff was represented at the administrative hearing by Ms. Stacy Halaby.  The record states both that Ms. Halaby is an attorney and a non-attorney representative.  (TR 24, 38).

2

approximately forty-five minutes at a time, and lift up to ten pounds. She sleeps approximately two to three hours every day and spends the rest of her time looking out the window or laying in bed.

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing Plaintiff's medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

**IV.    VOCATIONAL EXPERT TESTIMONY**

The VE testified that Plaintiff's past work as a substance abuse counselor was skilled, sedentary labor. The ALJ asked the VE to testify whether an individual of Plaintiff's age, education, past relevant work experience, and described limitations could perform Plaintiff's past work or any other work that exists in the State of Michigan or metropolitan Detroit area. The VE testified that work would be precluded due to Plaintiff's reported level of pain, limitations with the use of her hands, dizziness, crying spells, concentration difficulties, and her need to rest during the day.

Next, the ALJ asked the VE whether work was available for an individual of Plaintiff's age, education, and past work experience who retains the RFC to sit six hours in an eight hour work day, stand or walk two of eight hours in an eight hour work day, lift up to ten pounds occasionally and lesser weights more frequently, must avoid activities that require the use of upper extremities at or above shoulder level, no twisting or torquing of the torso throughout the extremes of range of motion, and must avoid continuous, repetitive postural activities such as stooping, squatting, kneeling, crouching, and bending. In addition, the hypothetical individual has a history of pain and discomfort in various joints, including the lower back, right shoulder, elbows and hands, although these symptoms do not preclude functioning within the sedentary RFC. The hypothetical worker

3

also has typical depressive symptoms which, while causing some emotional lability, do not significantly impact upon her cognition or her ability to function in immediate proximity or deal with people including coworkers, supervisors, and the public. The hypothetical worker's deficits do not require her to lay down or nap during the course of a typical work day. The VE testified that the hypothetical individual would be capable of performing Plaintiff's past relevant work as a substance abuse counselor.

Next, Plaintiff's representative asked the VE to assume a hypothetical individual with the same physical limitations as in the previous hypothetical, but with the added limitations that the worker cannot remember work-like procedures, maintain attention for extended periods of two-hour segments, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others, complete a normal work day and work week without interruptions from psychologically-based symptoms, or accept instructions and respond appropriately to criticism from supervisors. The VE testified that an individual with these limitations would not be capable of sustaining competitive employment.

## V.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010. He also found that although Plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 12, 2009, and suffers from the severe impairments of joint pain in the elbows, shoulders, and hands and back pain, she did not have an impairment or combination of impairments that meets or equals one of the listed impairments.

The ALJ concluded that Plaintiff retains the residual functional capacity (RFC) to perform

4

sedentary work, with the added limitations that she should avoid upper extremity use at or above shoulder level, avoid twisting or torquing her torso throughout the extremes of range of motion, and avoid repetitive postural activities. The ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from the alleged onset date of September 12, 2009 through September 2, 2011, the date of the ALJ's decision, because she remained capable of performing her past relevant work as a substance abuse counselor.

## VI.   LAW AND ANALYSIS

## A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

5

**B.**   **Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

1.  she was not engaged in substantial gainful employment; and
2.  she suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.   she did not have the residual functional capacity to perform her past relevant
     work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing

her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age,

education and past work experience to determine if she could perform other work.  If she could not,

she would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the

burden of proof only on "the fifth step, proving that there is work available in the economy that the

claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make

a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to

perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.

1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert

testimony in response to a hypothetical question if the question accurately portrays the plaintiff's

physical and mental impairments.  *Id.* (citations omitted).

**C.**   **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in

conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a

sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)."

*Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing."  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff argues that the ALJ failed to properly assess her mental impairment of depression. She contends that the ALJ erred in concluding that her depression caused no more than minimal limitations in her ability to perform basic work activities, failed to give proper weight to the medical opinions of evidence, and failed to pose a complete and accurate hypothetical to the VE.

1.    *Step Two*

Plaintiff first challenges the ALJ's conclusion that her depression was not severe because it caused no more than minimal limitations in her ability to perform basic work activities.  Mental impairments are evaluated on a five-point scale.  Adjudicators must rate the degree of functional loss resulting from a claimant's mental impairment in four areas of function: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  Those ratings then direct whether a claimant's mental impairment is severe.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).

A severe impairment or combination of impairments is one which significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment will be considered nonsevere only if it is a "slight abnormality which

has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).

An ALJ determines the severity of a claimant's medically determinable impairments at step two of the five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The severity analysis is simply a threshold determination. "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony v. Astrue*, 266 Fed. Appx. at 457.

The ALJ found at step two of the five-step sequential analysis that Plaintiff's joint pain in her elbows, shoulders, and hands, and her back pain constituted severe impairments. At the same time he found that Plaintiff's depression was not severe because it caused no more than minimal limitation in her ability to perform basic mental work activities. The ALJ then proceeded to the remaining steps of the sequential analysis. In the steps that followed, the ALJ stated that he considered all of Plaintiff's symptoms in light of the evidence of record. He also acknowledged Plaintiff's complaints of posttraumatic stress disorder and anxiety. The undersigned suggests that the ALJ's classification of Plaintiff's depression as nonsevere at step two does not constitute reversible error.

2.    *The Medical Evidence*

Next, Plaintiff argues that the ALJ improperly weighed the medical opinion evidence

8

pertaining to her mental condition and ignored the opinions of her social worker and of a state agency psychological expert. Plaintiff contends that a November 16, 2010 consultative psychological examination by Dr. Boneff shows that she has deficits in her short term memory, her ability to recall objects after three minutes, and her capacity to pay attention. She claims that Dr. Michele Leno, Ph.D., the state agency psychologist, concluded that she was limited to unskilled work and assessed her with moderate limitations in her ability to understand, remember, and carry out detailed instructions and maintain concentration for extended periods. She argues that her therapist, Ann Funchess, found multiple limitations in her ability to function in a work setting, including marked restrictions in social functioning and maintaining concentration, persistence, or pace, in her ability to interact appropriately with supervisors, coworkers, or the general public, and in her ability to maintain attention for extended periods of two hour segments. She also claims that an opinion by nurse practitioner, Margaret Kelly, supports her argument that she has cognitive impairments. (TR 487-89). All of this, she contends, goes to show that she is incapable of performing skilled or even semi-skilled work and thus cannot perform her past skilled work as a substance abuse counselor.

It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of

the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source, and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).

Social Security Ruling 96-6p states that an ALJ must consider the findings made by State agency medical consultants regarding the nature and severity of an individual's impairments as expert opinion evidence of a nonexamining source.  The Ruling further states that the ALJ is not bound by findings made by State agency physicians but may not ignore these opinions and must explain the weight given to these opinions in their decisions.  SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

Here, the ALJ assigned great weight to the psychological consultative evaluation of Dr. Boneff, which found that Plaintiff has sufficient cognitive capabilities to engage in work of moderate complexity and execute a two or three step procedure on a sustained basis.  (TR 526-29).  The ALJ also assigned little weight to the opinions of Plaintiff's social worker, Ann Funchess, because social workers are not an acceptable medical source under the regulations.  Ms. Funchess found that Plaintiff had moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace.  She also found that Plaintiff is able to understand, remember,

10

and carry out simple instructions and make simple work-related decisions but otherwise is not capable of carrying out or engaging in more complicated work-like settings. (TR 563-67).

The ALJ did not indicate what weight he assigned to the Psychiatric Review Technique and Mental RFC completed by Michele Leno, Ph.D. (TR 83-87). In these assessments, Dr. Leno opined that Plaintiff did not appear to have significantly limiting psychological impairments. However, the doctor also concluded that Plaintiff had moderate deficiencies in maintaining concentration, persistence, or pace, sustained concentration and persistence limitations, and moderate restrictions in her ability to understand and remember detailed instructions. Dr. Leno further opined that Plaintiff could successfully engage in work activities requiring a moderate degree of complexity but concluded that Plaintiff was limited to unskilled work. (TR 87). Since the ALJ found that Plaintiff was capable of performing skilled work, and did not include any limitations in the RFC indicating that Plaintiff had deficits in her ability to sustain concentration and persistence, it is clear the ALJ did not adopt Dr. Leno's conclusions.

The ALJ also did not indicate the weight he assigned to the opinion of Margaret Kelly, although he was not required to do so. Ms. Kelly is a nurse practitioner with a Master's Degree in Nursing Science. Therefore her opinions and assessments are not opinions from an acceptable medical source as defined in the regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). Because a nurse is not an acceptable medical source, the ALJ can consider her opinion as evidence from an "other" medical source but he is not required to accord the opinion any special weight or consideration. *Taylor v. Comm'r*, No. 11-46, 2012 WL 1029299, at *6 (W.D. Mich. Mar. 26, 2012) (citing 20 C.F.R. § 404.1513(d)(1)). The ALJ is under no obligation to explain the weight given to a nurse practitioner's opinion or give good reasons for why the opinion was discounted. *Southward*

11

*v. Comm'r*, No. 11-14208, 2012 WL 3887439, at *10 (E.D. Mich. May 17, 2012).

The evidence of record indicates that Plaintiff is capable of performing work involving no more than a moderate degree of complexity. This was the conclusion of both Dr. Boneff and Dr. Leno. In fact, Dr. Leno took her analysis a step farther and opined that Plaintiff's mental condition and her limitation to work involving only a moderate degree of complexity limited her to unskilled work. The other medical source evidence provided by Margaret Kelly and Ann Funchess indicate fairly significant restrictions and at least support the fact that Plaintiff is limited to work involving no more than a moderate degree of complexity.

Despite the evidence suggesting moderate complexity work, the ALJ found that Plaintiff was capable of performing skilled work. The regulations state that skilled work "may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c). The ALJ does not cite any medical opinion evidence that shows that Plaintiff is capable of sustaining work at a high level of complexity.

The ALJ may have based his finding that Plaintiff is capable of skilled work in part on his opinion that Plaintiff has only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace. (TR 27). However, the ALJ's assessment of these functional areas may have been slightly exaggerated. For example, with respect to social functioning, the ALJ stated that Plaintiff was noted to be appropriately dressed and cooperative with good eye contact. Yet the medical report to which he referred states that Plaintiff had only "fair" eye contact. (TR 27, 540). In addition, the ALJ's assessment of Plaintiff's activities of daily living states that Plaintiff attends to all of her personal care needs, spends time with others, and goes to church. Yet a review of the Adult Function Report to which he refers states that Plaintiff is in pain during her personal

hygiene care, she attends church "sometimes" and "when able," and she doesn't like being around people and prefers to be alone. (TR 170-77). With respect to concentration, persistence, or pace the ALJ noted that Plaintiff recalled three digits forward and backward, and recalled three out of three objects immediately, but failed to note that she recalled only one of three objects after three minutes. He also did not address Dr. Leno's opinion that Plaintiff has moderate deficits in her ability to sustain concentration and persistence.

The undersigned suggests that the evidence of record does not provide substantial support for the ALJ's conclusion that Plaintiff is capable of engaging in skilled work. Although the VE testified that Plaintiff could perform her past relevant skilled job as a substance abuse counselor, his testimony was based upon a hypothetical question that essentially contained no mental limitations. It is unclear what testimony the VE would have offered had the ALJ added to the hypothetical question a limitation that the hypothetical worker be restricted to no more than moderate complexity work, or included in the hypothetical a moderate impairment in concentration or persistence. The VE did not testify that jobs were available for an individual with Plaintiff's limitations if that individual required unskilled or semi-skilled work.

The undersigned recommends that this matter be reversed and remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should consider the findings made by Dr. Leno. Depending upon the treatment given to Dr. Leno's opinion, the ALJ should provide some discussion of whether Plaintiff has moderate deficiencies in concentration, persistence, or pace, as Dr. Leno found, and if so, what impact those deficits have on Plaintiff's RFC. In addition, the ALJ should revisit and if necessary provide additional support showing Plaintiff's ability to engage in skilled work. The ALJ may also find it

necessary to revisit the hypothetical questions and step five determination.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: January 27, 2014                    s/ Mona K. Majzoub
                                           MONA K. MAJZOUB
                                           UNITED STATES MAGISTRATE JUDGE

## <u>PROOF OF SERVICE</u>

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: January 27, 2014                          s/ Lisa C. Bartlett
                                                 Case Manager

15